Burger, for use, *v.* Freedom Township, Appellant.

Argued October 26, 1936. 

 Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ. 

*John Woodcock,* with him *B. F. Warfel* and *Frank B. Warfel,* for appellant.

*Robert A. Henderson,* for appellee.

OPINION BY JAMES, J., February 26, 1937:

On January 27, 1925, Henry Shaw, W. R. Benton and L. A. Shaw, as supervisors of Freedom Township, Blair County, Pa., executed and delivered to H. C. Burger a non-negotiable judgment note for $1,875 payable one year after date with interest. On March 1, 1927 Burger assigned and delivered the note to the Second National Bank of Altoona, Pa., as collateral security for his indebtedness, which indebtedness at the time of the entry of judgment consisted of three notes: $159.03 with interest from March 28, 1931, $400 with interest from March 28, 1931, and $1,000 with interest from May 4, 1931. The bank subsequently failed and on July 1, 1935 judgment was authorized, by the court of common pleas, to be entered in favor of H. C. Burger for the use of Robert A. Henderson, receiver of the Second National Bank, and against the township, for the face of the note with interest and costs. On July 11, 1935 a mandamus execution was issued, for the face of the judgment with interest from January 27, 1925, and upon petition of the township, a rule was granted

to show cause why the judgment should not be opened and the execution was stayed. An answer was filed by the plaintiff, depositions taken, and after argument the rule to open was discharged, from which order this appeal followed.

"An application to open a judgment entered upon a warrant of attorney is an equitable proceeding, addressed to the sound discretion of the court and to be disposed of in accordance with equitable principles. The judge sits as a chancellor. On appeal this court determines only whether the discretion has been abused. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable ...... discretion is abused": *Mielcuszny v. Rosol*, 317 Pa. 91, 176 A. 236; *Mallisee v. Hawkins*, 322 Pa. 58, 185 A. 230; *Fischer v. Hale*, 63 Pa. Superior Ct. 204; *Dippy v. Emerson C. Custis & Co.*, 116 Pa. Superior Ct. 274, 176 A. 551.

The meetings of the board of supervisors do not show any corporate action relating to the execution of the note, but the testimony of Burger and the secretary of the board at the time the note was issued, established that the note was given for orders previously issued. The auditor's report for the year 1925 listed as a liability of the township a note, dated June 28, 1924, to H. C. Burger for $2,000, but no reference is made to the note in suit. At the time the note was delivered, Burger was tax collector of the township, and any demand he made for its payment was upon the board which had executed and delivered the note. The Second National Bank did not notify any board of supervisors of the township that the note had been assigned or demand payment until June 1934. During the years 1925, 1926 and 1927 H. C. Burger was the tax collector of Freedom Township and in each of the years, the Republic Casualty Company became surety upon his tax collector bonds.

The casualty company subsequently became insolvent and Matthew H. Taggart, Insurance Commissioner of the Commonwealth of Pennsylvania, was directed to liquidate the business of the company. Upon demand of the insurance commissioner that he comply with his contract of indemnity, which he had given the casualty company, H. C. Burger made an assignment to the insurance commissioner in part as follows: "All of the Township Orders of Freedom Township, Blair County, Pennsylvania, Time Orders of said Township; notes of said Township owned by me and/or to which I have any claim; claims of mine against said Township for money advanced by me to and for said Township, and all and every tax duplicates of mine as collector aforesaid, the same being listed in a statement thereof hereto attached and marked 'Schedule A,' and all and whatsoever claim or claims I now have or may hereafter have against the said Township of Freedom. He, the said Assignee, to have the right to sue for, demand, recover and receive payment of the moneys represented by the securities hereby assigned." Subsequently, on behalf of H. C. Burger et al. to the use of the insurance commissioner, a bill in equity was filed in the Court of Common Pleas of Blair County against the Township of Freedom praying that an account be stated between the plaintiff and the defendant involving transactions between the township and H. C. Burger and asking for judgment in the sum of $15,438.74. No reference was made in the assignment by H. C. Burger, or in the exhibits to the bill in equity, as to the present judgment note. On September 30, 1930 the bill in equity was compromised and settled and an agreement was executed by all of the parties including H. C. Burger, whereby judgment was entered against the township for $7,500. The agreement further states: "H. C. Burger joins in this paper for the purpose of certifying that he assigned all of his claims against the township for notes and orders

and that he has no claim against the township by way of notes or orders. Upon the entry of this decree by the court, the plaintiff shall deliver over to the defendant or its supervisors or attorney all of the property in his possession covered by the above recited assignment." On the same day judgment and decree was entered by the court in accordance with the paper filed. A supervisor, in office at the time of the settlement, testified that the compromised agreement was intended to settle in full all claims between H. C. Burger and the township.

This note contained a power of attorney to confess judgment at any time and was, therefore, non-negotiable: *Reardon's Estate,* 307 Pa. 350, 161 A. 315. "The requirements as to notice apply to the assignment of non-negotiable paper, and in order to protect his rights under an assignment the first duty of the assignee is to give notice to the debtor. A failure to do this is at the peril of losing the debt, either by a subsequent assignment to another person, or by new defenses arising between the assignor and the debtor, or by a payment by the debtor to the assignor": 2 R. C. L. §32, p. 624. "Defenses and Set-offs to which an Assignee's Right is Subject. (1) An assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all set-offs and counterclaims of the obligor which would have been available against the obligee had there been no assignment, provided that such defenses and set-offs are based on facts existing at the time of the assignment, or are based on facts arising thereafter prior to knowledge of the assignment by the obligor": Restatement, Contracts, §167. "It is a well settled principle that the law casts upon the assignee of a bond or judgment note the duty of notifying the obligor or the promisor, in order to protect his rights thereto and prevent the extinguishment of the debt and payment to the obligee or prom-

isee": *May v. Newingham*, 17 Pa. Superior Ct. 469. "The consensus of all the opinions in this State, as elsewhere, is that the penalty which the assignee must suffer, by not giving notice to the debtor of an equitable assignment, is that if the assignor or creditor makes other assignments, or there are set-offs or subsequent dealings between the original parties, the party owing the debt assigned cannot be held liable to the assignee": *F. N. Bk. of Bangor v. Bangor Tr. Co.*, 297 Pa. 115, 146 A. 595; *Walker v. Emerich*, 300 Pa. 9, 149 A. 881. Of course the contrary would be true if the debtor had actual notice of the assignment of the obligee's rights: *North Penn Iron Co. v. Lithoid Co.*, 217 Pa. 538, 66 A. 860, or of facts which would reasonably impart knowledge of the change in the power to receive sums in satisfaction of the claim: *Tritt's Admr. v. Colwell's Admr.*, 31 Pa. 228.

This record establishes that the elected supervisors of the township during the years 1929 and 1930 had no knowledge or notice of the existence of the judgment note given by the supervisors in January 1925, or that any supervisors, other than those who executed the note, had any notice or knowledge until June 1934. The court below was of the opinion that the purpose of actual notice is to protect the debtor against paying the debt to the original payee or to another assignee, and that the succeeding supervisors were chargeable with knowledge that a preceding board had executed the note in question. We cannot subscribe to this principle as there was nothing, upon the minutes or in the records of the township, from which knowledge or notice of the existence of the note could have been imputed to the elected supervisors when the equity suit was compromised and settled. Undoubtedly, it is the duty of a township to know its outstanding indebtedness, but those who deal with township obligations cannot rest supinely by over a period of years and attempt to as-

sert claims or obligations due to those with whom, in the meanwhile, the existing supervisors had made full settlement of all accounts. Although neither the assignment or bill in equity set forth the present judgment note, when the payee of that note certified in the equity proceeding that he had assigned all of his claims against the township for notes and orders and had no claims against the township by way of notes or orders —no knowledge or notice having been brought home to them—the supervisors had the right to rely upon Burger's certificate that it included any and all obligations that had been received by him, whether held by him in possession or not. By reason of its neglect to notify the township that it held the note by assignment, the bank cannot now be permitted to assert its claim when by the exercise of reasonable diligence on its part, the claim could have been protected.

If the testimony, that notice of the assignment was not given until June 1934, be true, the bank stands in the position of H. C. Burger as of the date of the settlement, and the plain intent of that agreement was a full settlement of any and all notes or orders due to H. C. Burger. He cannot escape the plain language of his certificate by asserting that the note no longer belonged to him, as he still had a right to the note upon payment of his indebtedness. His deposition shows that he still asserted an interest in the note. If the bank maintains its right to the note, it will be required to pay to H. C. Burger the difference between the amount of his note and the amount collected upon the judgment, as the assignment was solely as collateral security for H. C. Burger's indebtedness. Nor does the fact that the bank was not a party to the equity proceeding vary the rule. When the bill was filed and settlement made, the supervisors had no knowledge of the existence of the note or its assignment to the bank. H. C. Burger's assignment and the compromise of the bill in equity clearly con-

template a settlement of all accounts between the township and H. C. Burger.

In refusing the petition to open the judgment, we are of opinion that the court below erred in not applying the law in accordance with the views expressed herein.

The order of the court discharging the rule is reversed; the rule is reinstated and made absolute.